**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

ANNA MATSON,
Plaintiff,

v.

VILLAGE OF HOLLY,
HOLLY VILLAGE COUNCIL,
APRIL BRANDON in her official and personal capacities,
AMBER KIER, in her official and personal capacities,
SHANNON COLE, in her official and personal capacities,
JIM KOSKELA, in his official and personal capacities,
THOMAS RYAN, in his official and personal capacities,
DANIEL WENDEL, in his official and personal capacities,
BUSTER WINEBRENNER, in his official and personal capacities,
Defendants.
______________________________/

Case No.: 26-cv-10537
Honorable ____________________

**COMPLAINT WITH JURY DEMAND**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
THOMAS J. LAMBERT (P98348)
Attorneys for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com
tlambert@olcplc.com

---

**COMPLAINT**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

NOW COMES Plaintiff ANNA MATSON, by and through counsel, and complains as follows:

**PARTIES**

1. Plaintiffs ANNA MATSON is a journalist who regularly gathers, analyzes, and publishes information concerning the conduct of government officials and agencies on matters of public concern to ensure transparency and accountability, and a resident of Holly, Michigan.

2. Defendant VILLAGE OF HOLLY is a municipal corporation formed under the laws of the State of Michigan, located in Genesee County, Michigan.

3. Defendant HOLLY VILLAGE COUNCIL is a seven-member body charged with making policy decisions and enacting ordinances for the Village of Holly, Michigan, and a "public body" as that term is defined by MCL 15.262.

4. Defendant AMBER KEIR is a public official elected to serve on the Holly Village Council. She is named in her official and personal capacities.

5. Defendant SHANNON COLE is a public official elected to serve on the Holly Village Council. She named in her official and personal capacities.

6. Defendant JIM KOSKELA is a public official elected to serve on the Holly Village Council. He is named in his official and personal capacities.

7. Defendant THOMAS RYAN is a public official elected to serve on the Holly Village Council. He is named in his official and personal capacities.

8. Defendant DANIEL WENDEL is a public official elected to serve on the Holly Village Council. He is named in his official and personal capacities.

9. Defendant BUSTER WINEBRENNER is a public official elected to serve on the Holly Village Council. He is named in his official and personal capacities.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## JURISDICTION

10. This is a civil action brought inter alia pursuant to 42 U.S.C. § 1983 seeking relief against Defendants for their violations of the United States Constitution and Michigan law.

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and § 1367(a) as this case involves federal questions and federal civil rights under 42 U.S.C. § 1983 and supplemental state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this Court as Defendants reside and/or conduct business in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

13. In 2025, Plaintiff ANNA MATSON submitted two requests for public records under Michigan's *Freedom of Information Act* (FOIA) to Defendant VILLAGE OF HOLLY that are not at issue in this case.

14. Events progressed and in June of 2025, Plaintiff ANNA MATSON filed suit in state court against Defendant VILLAGE OF HOLLY over the Village's handling of the requests [hereinafter the "FOIA lawsuit"].

15. The FOIA lawsuit is a separate matter and is ongoing as of the filing of this Complaint.

16. On December 9, 2025, Defendant HOLLY VILLAGE COUNCIL went into closed session during a regular meeting under the Michigan *Open Meetings Act* (OMA) to discuss legal opinions <u>with</u> its attorney.

17. On December 16, 2025, Defendant HOLLY VILLAGE COUNCIL held a special meeting with the stated goal of discussing possible violations of the OMA and to "cure" or reenact certain decisions previously made on December 9 that at least one member thought might have been done in violation of the OMA.

18. Defendant HOLLY VILLAGE COUNCIL voted to <u>not</u> reenact any decisions made on December 9.

19. On January 13, 2026, Defendant HOLLY VILLAGE COUNCIL again went into closed session during a regular meeting, this time

purportedly to discuss the above FOIA lawsuit and to review minutes from the December 9 closed session.

20. After coming out of the closed session, a motion was made to approve the direction given to the attorney in closed session, which Defendant HOLLY VILLAGE COUNCIL passed.

21. The following day, on January 14, 2026, counsel for Plaintiff ANNA MATSON received a settlement offer from Defendant VILLAGE OF HOLLY in the FOIA lawsuit.

22. On January 15, 2026, at approximately 12:00 pm, Plaintiff ANNA MATSON submitted new FOIA requests to Defendant VILLAGE OF HOLLY for different records pertaining to Village of Holly operations that were unrelated to the FOIA lawsuit.

23. At approximately 4:16 pm on the same day, Defendant VILLAGE OF HOLLY announced a special council meeting to be held five days later, on January 20, 2026.

24. Around this same time, counsel for Plaintiff ANNA MATSON in the FOIA lawsuit received an urgent call from counsel for Defendant VILLAGE OF HOLLY who inquired whether Plaintiff ANNA MATSON's FOIA counsel was aware of the new requests, advised that the Village was upset and was calling a meeting to address the requests, and that Plaintiff ANNA MATSON should not respond to the previously-conveyed offer at that time.

25. On January 20, 2026, Defendant HOLLY VILLAGE COUNCIL held the previously announced special meeting, during which the Council again went into closed session for the purported purpose of discussing the FOIA lawsuit.

26. During this closed session, Defendants did not limit their discussion to trial or settlement strategy in the pending FOIA lawsuit.

27. Instead, Defendants discussed Plaintiff ANNA MATSON's newly submitted FOIA requests, expressed frustration and hostility toward Plaintiff's protected activity, and deliberated regarding the content, timing, and dissemination of a public press release directed at Plaintiff.

28. Defendants further discussed whether to withdraw the settlement offer previously conveyed to Plaintiff on January 14, 2026, and whether the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Village should publicly characterize Plaintiff's lawful FOIA activity in a manner calculated to discredit, deter, and punish her.

29. After coming out of the closed session, the Defendant HOLLY VILLAGE COUNCIL again voted to approve a vague direction given, in a nonpublic fashion, to its legal counsel while in the closed session without detail as to what the direction was.

30. At no point during the January 20, 2026 closed session did Defendants limit their discussion to trial strategy, settlement posture, or other matters permitted to be discussed in closed session under the Michigan Open Meetings Act.

31. Instead, Defendants discussed Plaintiff ANNA MATSON's newly submitted FOIA requests, the Village's dissatisfaction with Plaintiff's protected activity, and the content, timing, and dissemination of a public press release directed at Plaintiff ANNA MATSON.

32. Later, on the same day, counsel for Plaintiff ANNA MATSON's FOIA counsel received a notice from the Village's counsel that the January 14 offer had been withdrawn.

33. The withdrawal of the settlement offer was not based on any change in the merits of the underlying FOIA lawsuit, but was directly precipitated by Plaintiff ANNA MATSON's continued exercise of her legal and constitutional rights, including her submission of additional lawful FOIA requests on January 15, 2026.

34. The following day, on January 21, 2026, Defendant VILLAGE OF HOLLY issued a press release publicly commenting on the ongoing FOIA lawsuit. **Exhibit 1**.

35. In its press release, Defendant VILLAGE OF HOLLY falsely, derided Plaintiff ANNA MATSON for submitting "voluminous" FOIA requests and for a "pattern of excessive and repetitive [FOIA] filings."

36. The press release falsely suggested that Plaintiff ANNA MATSON's lawful and statutorily authorized FOIA activity imposed an "unreasonable burden" on the Village and impaired municipal services, despite the Village's legal obligation to comply with FOIA and despite the absence of any finding by a court that Plaintiff ANNA MATSON's requests were improper or abusive in any way.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

37. The press release further falsely suggested that Plaintiff ANNA MATSON's lawful FOIA requests were responsible for imposing an "unreasonable burden" on the Village and for "significantly impacting the Village's ability to perform its core services for the community as a whole." *Id*.

38. Defendant VILLAGE OF HOLLY widely and indiscriminately disseminated the press release by posting it on its public website, blasting it out via a mass email campaign, and posting it on the Village's Facebook page.

39. Defendant APRIL BRANDON also shared the post to her official "President April Brandon Holly Village" Facebook page, the "Holly, MI (Open Discussion/Forum)" Facebook group, and her personal Facebook page.

40. Defendants' use of official government-controlled communication channels to single out and disparage Plaintiff ANNA MATSON transformed the press release from mere expression into an exercise of governmental power intended to punish protected activity and deter future petitioning.

41. Defendant APRIL BRANDON restricted who can comment on the post to her official Facebook page, and, ironically, disabled commenting on her post to the "Holly, MI (Open Discussion/Forum)" Facebook group.

42. Defendant JIM KOSKELA also shared the Village's Facebook post from his official "Village of Holly Councilman Jim Koskela" Facebook page, and to the "Holly, MI (Open Discussion/Forum)" Facebook group with messages about "Fighting for our residents."

43. As a result of Defendant VILLAGE OF HOLLY's press release, Plaintiff ANNA MATSON received numerous contacts from various news outlets asking for comment.

44. Plaintiff ANNA MATSON was compelled to expend time and resources responding to stigmatizing accusations made by her own government while litigation was pending, interfering with her professional work as a journalist and chilling her ability to continue pursuing public-records requests and litigation against the Village.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## COUNT I
## FIRST AMENDMENT RETALIATION
## 42 U.S.C. § 1983
## (ALL DEFENDANTS)

45. The prior paragraphs are repled herein.

46. The First Amendment, incorporated against all Defendants by way of the Fourteenth Amendment, recognizes that Plaintiff ANNA MATSON has the right to petition their government for redress of grievances without retaliation.

47. Plaintiff ANNA MATSON engaged in protected conduct by petitioning activity before the Oakland County Circuit Court for the redress of her grievances by way of the FOIA lawsuit.

48. In direct retaliation for Plaintiff ANNA MATSON's protected conduct, Defendants, individually and jointly, undertook adverse actions against her by unlawfully orchestrating public efforts to shame, disparage, discredit, and punish her, with the intent to deter and chill her continued exercise of protected rights.

49. Defendants' retaliatory actions included, but were not limited to: (a) withdrawing a pending settlement offer; (b) approving and issuing an official press release disparaging Plaintiff's lawful conduct; and (c) amplifying that message through official governmental channels while restricting public response.

50. Defendants' public shaming and disparagement is the type of adverse action that would deter a person of ordinary firmness from continuing to exercise their constitutional right to petition the courts for redress of grievances or seeking access to public records.

51. By leveraging official governmental authority and communication infrastructure to stigmatize Plaintiff ANNA MATSON's protected activity, Defendants imposed tangible and foreseeable consequences, including reputational harm, professional interference, and legal disadvantage.

52. Defendants' adverse actions were directly caused by, and undertaken in retaliation for, Plaintiff ANNA MATSON's protected activity.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

53. Defendants did not merely speak; they used the machinery of government to punish a litigant, withdraw a settlement offer, stigmatize protected petitioning activity, and deter further lawful requests.

54. Plaintiff ANNA MATSON has suffered damages as a result of Defendants' actions.

55. Defendants in their official capacities are liable in their official capacity under *Monell* as flowing from the execution of the municipality's policy or custom pursuant one or more of the four methodologies provided by *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

56. Defendants' retaliatory actions were undertaken pursuant to official policy, custom, and decision-making by final municipal policymakers.

57. The Holly Village Council and Village President APRIL BRANDON possessed final authority over litigation strategy, settlement decisions, and official communications on behalf of Defendant VILLAGE OF HOLLY.

58. The decision to withdraw the settlement offer, issue a public press release targeting Plaintiff ANNA MATSON, and disseminate that release through official channels was expressly discussed, approved, and ratified by the Village Council during closed session meetings.

59. The acts and decisions of the individual Defendants, in their personal capacities, were designed to intentionally or wantonly causing harm due to the utter disregard of Plaintiffs' federally protected rights.

**COUNT II**
**OPEN MEETINGS ACT - MCL 15.271**
**(DEFENDANT HOLLY VILLAGE COUNCIL)**

60. The prior paragraphs are repled herein.

61. It is well established that the Michigan *Open Meetings Act* does not permit closed sessions to be held to receive oral legal opinions. *Booth Newspapers, Inc v Wyoming City Council*, 168 Mich App 459, 466 (Mich Ct. App 1988); *People v Whitney*, 228 Mich App 230, 246 (Mich. Ct. App. 1998).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

62. Defendant HOLLY VILLAGE COUNCIL has met in closed sessions for reasons that are not permitted by law and that otherwise require a meeting that is open to the public.

63. Defendant HOLLY VILLAGE COUNCIL has improperly discussed non-exempt matters in closed session, including Plaintiff ANNA MATSON's FOIA requests, the contents, timing, and approval of a public press strategy, and otherwise retaliating against Plaintiff ANNA MATSON, none of which are permissible subjects for closed-session deliberation under the *Open Meetings Act*.

64. Defendant HOLLY VILLAGE COUNCIL has unlawfully made decisions in closed sessions that are not permitted by law and that must otherwise be made in meetings that are open to the public.

65. Defendant HOLLY VILLAGE COUNCIL has an established and ongoing history of these unlawful acts.

**COUNT III**
**INTENTIONAL VIOLATIONS**
**OPEN MEETINGS ACT - MCL 15.273**
**(All Individual Defendants in their official and personal capacities)**

66. The prior paragraphs are repled herein.

67. Defendants know and have known that the OMA limits closed sessions of public bodies to only certain purposes and topics of discussion.

68. Defendants were expressly aware of potential OMA violations arising from prior meetings and convened a special meeting on December 16, 2025 for the stated purpose of addressing and curing such violations.

69. Despite this knowledge, Defendants intentionally continued to convene closed sessions for impermissible purposes and to make substantive decisions in secret that were required by law to be made in public.

70. Defendants know and have known that final decisions regarding topics discussed in closed sessions must be made in meetings open to the public.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

71. With knowledge that their conduct violates the OMA, Defendants intentionally met in closed sessions for reasons not permitted by the OMA and to discuss topics that must otherwise be discussed in meetings open to the public under the OMA.

72. With knowledge that their conduct violates the OMA, Defendants intentionally made final decisions in closed sessions that should have been made in meetings open to the public.

73. Defendants' conduct was intended not only to punish Plaintiff ANNA MATSON, but to send a broader message to residents, journalists, and potential FOIA requesters that those who challenge the Village or aggressively seek public records will be publicly shamed and subjected to retaliatory treatment.

74. Such conduct undermines the core purposes of the First Amendment, Michigan's Freedom of Information Act, and the Open Meetings Act.

**JURY DEMANDED**

75. A jury trial is demanded for all triable issues.

**RELIEF REQUESTED**

76. WHEREFORE, Plaintiff ANNA MATSON respectfully requests this Court to—

a. Enter a declaration that Defendants' actions, as alleged herein, violated the First Amendment to the United States Constitution;

b. Enter a declaration that Defendant HOLLY VILLAGE COUNCIL violated the Michigan Open Meetings Act, MCL 15.261 et seq., by convening closed sessions for impermissible purposes and by making substantive decisions outside of meetings open to the public;

c. Issue a permanent injunction prohibiting Defendants, their officers, agents, employees, and successors from using official governmental authority, resources, or communication channels to retaliate against Plaintiff ANNA

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

MATSON or other individuals for engaging in protected First Amendment activity, including but not limited to filing FOIA requests or pursuing litigation against the Village;

d. Issue a permanent injunction prohibiting Defendant HOLLY VILLAGE COUNCIL from discussing non-exempt matters in closed session, including press strategy, public messaging, or retaliation against individuals exercising statutory or constitutional rights;

e. Enter an order requiring Defendant HOLLY VILLAGE COUNCIL to comply with the Open Meetings Act by confining closed-session discussions to matters expressly permitted by law and by making all final decisions in meetings open to the public;

f. Award compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, for the emotional distress, reputational harm, professional interference, and other injuries caused by Defendants' unlawful actions;

g. Award nominal damages for the violation of Plaintiff ANNA MATSON's constitutional rights;

h. Award punitive damages against the individual Defendants in their personal capacities, to punish and deter willful, malicious, or reckless disregard for Plaintiff ANNA MATSON's federally protected rights;

i. Award attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, the Michigan Open Meetings Act, and all other applicable statutes and rules; and

j. Provide such other and further relief as this Court deems just and proper.

Date: February 16, 2026

RESPECTFULLY SUBMITTED:

*<u>/s/ Philip L. Ellison</u>*
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com